## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | |
|---|---|
| **LESLIE KLOCK,** )<br><br>Plaintiff, )<br><br>v. )<br><br>**WAL-MART STORES EAST, LP,** *et al.*, )<br><br>Defendants. )<br> | **Civil Action No. 8:21-cv-02542-GLS** |

### MEMORANDUM OPINION

Plaintiff Leslie Klock ("Plaintiff") has maintained a lawsuit against Defendants Wal-Mart Stores East, LP and Wal-Mart Real Estate Business Trust (collectively "the Defendants") who own and operate a store where she sustained injuries after slipping and falling on a liquid substance located on the floor. (ECF No. 3).[1]  Plaintiff advances negligence and *respondeat superior* claims against the Defendants. After Scheduling Orders were imposed, the parties completed discovery. (ECF Nos. 25, 26, 37, 39, 41).

Pending before the Court[2] is "Defendants' Motion for Summary Judgment" and memorandum in support thereto. (ECF Nos. 50, 50-1) (collectively "the Motion").  Plaintiff filed an Opposition and memorandum in support thereto (collectively "the Opposition"), and the Defendants filed their Reply. (ECF Nos. 54, 54-1, 56). The matter has been fully briefed;

---

[1] Initially, Plaintiff initiated suit in the Circuit Court for Charles County, Maryland against the Defendants, and entity called "Wal-Mart, Inc.," and James Leslie, an Asset Manager. Plaintiff has since abandoned her claims against Mr. Leslie and Wal-Mart, Inc. *See* ECF Nos. 3, 22.

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of this Court to conduct all further proceedings in this case, to include through trial, entry of final judgement, and resolution of post-judgment proceedings. (ECF No. 19).

accordingly, no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).  For the reasons set forth below, the Motion will be granted.

## I.  FACTUAL BACKGROUND[3]

### A.  The Day of the Incident

On August 30, 2018, Plaintiff visited a Walmart store ("the Store") located at 40 Drury Drive in La Plata, Maryland with her daughter.  (Deposition of Plaintiff, "Plaintiff Dep.," 23:8-13; J.A. 02).  Plaintiff obtained a shopping cart, and walked down several aisles, including the aisles between the produce and freezer sections, once without incident.  (Plaintiff Dep. 25:15-27:15; J.A. 03-05).  Plaintiff then turned around and walked back down the same aisle towards the freezer section, at which time she slipped and slid under her cart.  (*Id*.).

Prior to the incident, both when she first walked down the aisle and right before she fell, Plaintiff did not see anything on the floor.  (Plaintiff Dep. 32:10-33:8; J.A. 06-07).  Before her fall, Plaintiff did see any customers or any of the Store's personnel in the area where she fell.  (Plaintiff Dep. 42:17-22; J.A. 11).

After she fell, Plaintiff observed a liquid on the floor, which she described as "dirty colored" and looked "like discolored water."  (Plaintiff Dep. 38:3-39:17; J.A. 09-10).  The "puddle" of liquid was round and larger than "dinner plate size."  (Plaintiff Dep. 38:5-20; J.A. 09).  At her deposition, Plaintiff further described a "rusty" or "orangish rusty" stain on the floor "in the middle [of the puddle]."  (Plaintiff Dep. 38-39, 43; J.A. 09-10,12, 71).  Plaintiff did not observe anything else in the liquid, like footprints or track marks-i.e., as if a grocery cart had gone through the puddle.  (Plaintiff Dep. 39: 4-9; J.A. 010).

---

[3] The parties submitted a Joint Appendix.  (ECF No. 57) ("J.A.").  Defendants' submissions can be found in this range: Bates Nos. 0001-0063. Plaintiff's submissions can be found in this range: Bates Nos. 0064-0174. The Court will refer to the documents as, e.g., J.A. 01. The facts are undisputed, except where specifically noted.

Plaintiff cannot say how the liquid came to be on the floor, nor can she say how long the liquid had been on the floor.  (Plaintiff Dep. 42:17-22; J.A. 11).  At the time of the incident, Plaintiff did not see any liquid dripping from the ceiling.  (Plaintiff Dep. 42-43; J.A. 11-12).  Furthermore, Plaintiff did not see a lid or straw at the location of the incident.  (Plaintiff Dep. 45:9-13; J.A. 75).

After she fell, Plaintiff saw a man across the aisle from her.  (Plaintiff Dep. 36:16-22; J.A. 08).  According to Plaintiff, the man across the aisle saw her fall.  (Plaintiff Dep. 44:5-6; J.A. 74).  The man completed a witness statement form, and his name was Scott Youngs.  (Plaintiff Dep, 44:5-17, J.A. 13; Witness Statement of Scott Youngs, J.A. 20).   In his hand-written witness statement, Mr. Youngs wrote that he heard a "loud squeak," and a woman who "cr[ied] out," so he turned his head and saw Plaintiff "finish skidding, legs spreading and lurching into her cart." Witness Statement of Scott Youngs, J.A. 20).  Mr. Youngs "looked at her feet and saw a liquid spill and the top of a cup on the floor at her feet," and saw "a skid mark where her shoe had clearly slipped."  (*Id.*).

The Store's Asset Manager, James Leslie, arrived at the scene of the incident shortly after it occurred.  (Deposition of Asset Manager James Leslie, "Manager Dep.," 28:3-29:21; J.A. 90-91).  He became aware that Plaintiff had fallen via a "Code White" notice transmitted over a walkie talkie that there was a medical incident at the location.  (Manager Dep., 28-29; J.A. 90-91).  Mr. Leslie did not recall whether Plaintiff was standing up or was on the ground at the time of his arrival.  (Manager Dep. 30; J.A. 23).  At the time of his arrival, Mr. Leslie observed a "few drops" of orange liquid on the floor, which were perhaps the size of a quarter and a nickel.  (Manager Dep. 31, 80, 81; J.A. 24, 26-27).  He does not know how long the orange liquid was there before

he arrived, nor does he have any idea who caused it to be there.  (Manager Dep. 80; J.A. 26).[4]  He also saw a "dirt smear" on the floor "where it looked like she fell or slipped."  (Manager Dep. 31; J.A. 24).  According to Mr. Leslie, there was "a straw and a lid in the area that looked like that may have gone with the orange liquid."  (Manager Dep. 31:15-18; J.A. 24).  That lid was clear and the straw, which was white with yellow and orange stripes, reminded him of a McDonald's straw.  (Manager Dep. 31, 89, 92; J.A. 24, 28-29).[5]  Mr. Leslie also did not see liquid dripping from the roof or ceiling at the time that he arrived on the scene.  (Manager Dep. 81:8-12; J.A. 27).  Mr. Leslie was not aware of any reports of ceiling leaks anywhere in the store that day, nor was he personally aware of any leaks.  (Manager Dep. 78; J.A. 25).

According to the Plaintiff, after the incident, an unidentified person arrived at the scene carrying a mop.  (Plaintiff Dep. 44:3-45:8; J.A. 74-75).  Plaintiff heard this individual ask Mr. Leslie "is the ceiling leaking again."  (Plaintiff Dep. 44:20-22; J.A. 13).  Plaintiff says that she heard Mr. Leslie say "don't worry about that," and he instructed the individual to "clean up this mess."  (Plaintiff Dep.44-45; J.A. 74-75).

Also following the incident, another manager escorted Plaintiff to the Store's pharmacy to tend to her injuries.  (Plaintiff Dep. 44:13-14, J.A. 13).  As a result of the fall, Plaintiff suffered a cut on her leg, scraped arms, and a bruised elbow.  (Plaintiff Dep. 27:16-21, J.A. 05; Manager Dep. 35:17-19, J.A. 95).

Plaintiff subsequently completed a customer incident report.  (Plaintiff Dep. 44:15-47:3; J.A. 76-77; Customer Incident Report, J.A. 19).  The customer incident report is handwritten by

---

[4] Despite so testifying during his deposition, on the day of the incident Mr. Leslie completed a claim report, and wrote "MCDONALDS DRINK WAS SPILLED ON FLOOR BY ANOTHER CUSTOMER, CLAIMANT WALKED THROUGH AND SLIPPED ON LIQUID."  (Claim Report, J.A. 30).
[5] Mr. Leslie also completed a witness statement that day, in which he described a "McDonald's" lid and straw in a puddle of liquid.  (Witness Statement of James Leslie, J.A. 31).

Plaintiff, except for Mr. Leslie's signature. (Customer Incident Report, J.A. 19). The report states that Plaintiff "slipped on a spilt (sic) drink." (*Id.*). According to Plaintiff, Mr. Leslie told her what to write on the incident report. (Plaintiff Dep. 50:6-7; J.A. 17).

After assisting Plaintiff with her injuries and her incident report, Mr. Leslie returned to the area where Plaintiff fell and took photographs. (Manager Dep. 34:10-18; J.A. 94). By this time, the area had been cleaned and the cones and "wet floor" signs had been placed in the area of the incident. (*Id.*).

**B. Other Evidence in the Summary Judgment Record**

When Plaintiff was deposed several years later, she testified that, during her shopping trips to the Store before the incident, she had seen buckets and caution cones on the floor of the Store; the buckets were in the aisle, but not where her incident occurred. (Plaintiff Dep. 61; J.A. 18).

Eleven days after the incident, Plaintiff returned to the Store. (Plaintiff Dep. 59:4-6; J.A. 81). During that visit, Plaintiff observed a wet floor sign, a bucket collecting water leaking from a rusted ceiling pipe, and a stain on the floor approximately in the area where she fell. (Plaintiff Dep. 102:20-103:20; J.A. 85-86; Photo, J.A. 0107). She also saw an "orangish, brownish-looking spot" near a bucket, which she described to be the same color of the liquid that she slipped on. (Plaintiff Dep. 102; J.A. 85). Plaintiff took photos of the buckets and floor. (Plaintiff Dep. 59:1-20, J.A. 81).[6] Plaintiff also looked up and saw a water stain on a white pipe. (Plaintiff Dep. 103; J.A. 65). According to Plaintiff, she spoke to an unidentified employee who stated that "oh a lady slipped and fell and we're having problems with the ceiling leaking." (Plaintiff Dep. 104; J.A. 66).

---

[6] The two photos show a date of "September 10, 2018" and "Plaintiff #3 Photo (11 days later)," respectively. (Photo, J.A. 21; Photo, J.A. 107).

During his deposition several years after the event, Mr. Leslie was asked to review the photograph from eleven days after Plaintiff's incident, and comment on the mark on the floor. (Manager Dep. 44:18-45:3; J.A. 99-100).  Mr. Leslie testified that the mark on the floor in the photo was "in a slightly different location, but the coloration look[ed] similar" to the mark on the floor at the time of Plaintiff's incident.  (*Id.*).  Mr. Leslie also testified that after the incident he reviewed the Store's surveillance footage.  However, the video cameras do not capture the area where the incident occurred; thus, there is no surveillance footage of the incident or anyone coming into the area.  (Manager Dep. 39, 66; J.A. 98, 105).

The original roof to the store was put on in or about 2000.  (Deposition of Walmart Corporate Designee Seth Lombard, "CD Dep.," 24: 4-9; J.A.112).  The record also includes a Roof Assessment Report dated November 30, 2016 for the Store.  (Roof Assessment Report, J.A. 133-150).  The report reflects that hail/tornado caused damage to the roof, and after that the roof was re-covered with wood and other materials.  (J.A. 134).  The report also states that the previous repair did not follow "good roofing practices."  (*Id.*).  The report includes a recommendation that the existing roof systems should be "removed" to the deck, and that re-roofing be done.  (Roof Assessment Report, J.A. 134).

The Store's roof had several documented leaks from 2016 until the time of Plaintiff's incident.  (CD Dep., 32:15-40:15; J.A. 120-127).  However, the areas with identified leaks included the Pharmacy, sporting, fabric, tire lube express, lawn and garden, and over the registers in the "physicist" area.  (*Id.*).  The record contains no evidence of a roof leak over the grocery area or frozen food area where Plaintiff's incident occurred.  (Roof Assessment Report, J.A. 133-150; CD Dep., 32-40; J.A. 120-127).

Defendants have invoices and other records relating to and repairs made on the roof before the incident.  One of the work orders requested services to make repairs to the roof for "leaks all over the place," further stating "this is a safety issue for the customers."  (CD Dep. 35:15-22, 48; J.A. 0122).  However, none of the work order or invoices describe that there was a roof leak in the area where Plaintiff's incident occurred.  (CD Dep. 48-49; J.A. 33, 34).[7]

On or about July 18, 2018, Defendants had submitted a request to the relevant city officials for a permit for a new roofing system.  (J.A. 165-173).

The record also includes weather records from the National Oceanic and Atmospheric Administration (NOAA).  The NOAA reports indicate that at Patuxent River Naval Air Station (approximately 35 miles to the south-southeast of the Store), the last documented precipitation prior to Plaintiff's incident occurred on August 22, 2018, approximately eight days prior to Plaintiff's incident.  (NOAA Weather Records, J.A. 36-39).  Precipitation data for the day prior to Plaintiff's incident at this location is hard to decipher.  (NOAA Weather Records, J.A. 41, 44). The NOAA records indicate no documented precipitation at Quantico, VA (approximately 20 miles to the east of the Store) in the 72 hours prior to Plaintiff's incident. (NOAA Weather Records, J.A. 50).  The NOAA records indicate no documented precipitation at Camp Springs Andrews Air Force Base (approximately 22 miles to the north of the Store) on the day of Plaintiff's incident. (NOAA Weather Records, J.A. 42-43).

---

[7] Luke Coleman, a representative from a construction company, testified that his company completed work at the Store after the Plaintiff's incident (in or about 2019); thus, he had no knowledge of the condition of the roof before that. (Deposition of Luke Coleman, 58-60, 73, 74; J.A. 160-164).

## II.   THE LAW

### A.  Summary Judgment

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A fact is material if it might affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(a); *Wit Man Tom v. Hospitality Ventures, LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020).  The burden can be satisfied through the submission of, e.g., depositions transcripts, answers to interrogatories, admissions, declarations, stipulations, and affidavits. *Celotex Corp.*, 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984); *see also*  Fed. R. Civ. P. 56(c)(1)(A).

The Court must construe the facts and documentary materials submitted by the parties in the light most favorable to the party opposing the motion.  *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).  To defeat a motion for summary judgment, the nonmoving party cannot simply rest on allegations averred in its opposition or other brief.  Rather, the nonmoving party must demonstrate that specific material **facts** exist that give rise to a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 323(emphasis supplied); *see also* Fed. R. Civ. P. 56(c)(1).

Summary judgment is inappropriate if sufficient evidence exists from which a reasonable jury may decide in favor of the non-movant.  *Anderson*, 477 U.S. at 250.  However, a "mere

existence of a scintilla of evidence in support of the [non-movant]" is insufficient to create an issue of material fact. *Anderson*, *supra*, 477 U.S. at 248.

### B. Negligence

Under Maryland law, a negligence claim requires a plaintiff to prove the following elements: (1) that the defendant was under a duty to protect the plaintiff from injury; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual loss or injury; and (4) that the loss or injury proximately resulted from the defendant's breach of the duty. *Joseph v. Bozzuto Management Co.*, 173 Md. App. 305, 314 (2007) (citing *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999)). Here, determination of the summary judgment motion directly implicates the first and second elements of negligence.

Under the first element, a proprietor owes a duty to a business invitee[8] to "use reasonable and ordinary care to the premises safe" for that invitee, and to "protect him from injury caused by the unreasonable risk that the invitee, by exercising ordinary care for his own safety, will not discover." *Henley v. Prince George's County*, 305 Md. 320, 339 (1986). Put another way, a shopkeeper has a duty to an invitee to "keep the premises in a reasonably safe condition and will be liable for injuries sustained in consequence of a failure to do so." *Maans v. Giant of Maryland, LLC*, 161 Md. App. 620, 627 (2005)(quoting *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 117 (1955)). Thus, a shopkeeper has several duties which include "the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Tennant*, 115 Md. App. at 388.

---

[8] In Maryland premise liability cases, the duty of care owed by a proprietor to those who enter the premises is predicated upon the legal status of the individual. *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 387-88. (1997). The highest duty is owed to an invitee, someone who is invited or permitted on the premises for business purposes. *Id.* Here, the parties do not dispute that Plaintiff was an invitee.

That being said, a proprietor is not an "insurer of their customer's safety," and an injury does not give rise to a presumption of negligence. *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 232 (1965). When a customer is injured in a store, that customer has the burden to first to establish that "the proprietor. . .had actual or constructive knowledge that the dangerous condition existed." *Rehn v. Westfield America et al.,* 153 Md. App. 586, 593 (2003).

### III.  DISCUSSION

#### A.  Parties' Arguments

Defendants argue that they are entitled to summary judgment as a matter of law for several reasons. First, Plaintiff did not fall on a liquid that had leaked from the ceiling. Because that is the case,  Defendants did not create a dangerous condition by failing to maintain or replace the roof. Second, on the day of the incident, before Plaintiff slipped and fell, Defendants did not  have actual knowledge that the liquid was on the floor.  Alternatively, on the day of the incident, Defendants did not have constructive knowledge of the liquid on the floor.  (Motion, pp. 7-11).

Plaintiff's arguments, in contrast, are harder to decipher. Plaintiff first appears to argue that there is a genuine issue of material fact as to whether the liquid that she slipped on came from a leak in the ceiling/roof or came from a spilled drink.  According to Plaintiff, she slipped and fell on a liquid that, more likely than not, had leaked from the ceiling/roof. Put another way, Defendants created the dangerous condition (liquid on the floor) by failing to maintain or replace the roof.  Alternatively, Plaintiff argues that if the liquid that Plaintiff slipped on came from a drink that had spilled on the floor, Defendants had actual notice of the spilled drink because a jury may conclude that it was spilled by an employee.  Plaintiff also contends that Mr. Leslie had actual knowledge of the spilled drink before Plaintiff fell.  (Opposition, pp. 8-11).

In addition, while not entirely clear, Plaintiff also seems to argue that Defendants had constructive knowledge of the liquid on the floor.  According to Plaintiff, the following facts establish that Defendants had constructive notice: (1) the statements made by two unidentified Store employees; (2) when Plaintiff visited the store eleven days later there was a stain on the floor similar in color to the stain on the day of the incident, and there was water leaking from a ceiling pipe. (*Id.*). Furthermore, Plaintiff argues that Defendants breached their duty to inspect the premises and to "warn customers that it (sic) was actively seeking permits to replace the roof due to water damage and leakage issues," and failed to "enhance their maintenance/floor cleaning policies to account for these dangers."  (Opposition, pp. 10, 11).

Finally, Plaintiff also contends that: (1) Mr. Youngs' statement is incredible; (2) Mr. Leslie's testimony about seeing a straw and a lid with the orange liquid on the floor where Plaintiff fell is not credible; and (3) that video evidence existed that has been spoliated. (Opposition, pp. 10, 11).

In the Reply, Defendants argue that: (1) the credibility of witness testimony is irrelevant at the summary judgment stage; and (2) Plaintiff's attempt to raise a spoliation of evidence argument is untimely and inappropriate at this procedural juncture.  (Reply, pp. 6-9).

## B.  Actual Knowledge & Whether Defendants Created the Dangerous Condition

### 1.  *Leaky Roof Theory*

Plaintiff avers that ample evidence exists to support her theory that the ceiling leaked and that she slipped on a puddle resulting from that leak.  Relatedly, then, Defendants had actual knowledge that the roof/ceiling was leaking, and by failing to take reasonable and ordinary precautions to prevent the leakage, Defendants created a dangerous condition or breached their duty to keep the premises safe for Plaintiff and to protect her from injury.

Actual knowledge, or actual notice,  is "knowledge on the part of the [proprietor], acquired either by personal observation or by communication from third persons, of that condition . . . which is alleged to constitute the defect [or dangerous condition]." *Colbert v. Mayor and City Council of Baltimore*, 235 Md. App. 581, 588 (2018) (internal citation omitted).  Actual notice can also be established if the proprietor created the dangerous condition.  *Tennant*, 115 Md. App. at 392.

 The Court will first analyze whether, when construing the facts in Plaintiff's favor, a reasonable jury could find that she slipped on a liquid that was on the floor due to a ceiling/roof that leaked because Defendants failed to maintain it.

After considering the evidence before it, the Court ultimately must agree with Defendant that the record contains  insufficient relevant or admissible evidence from which a reasonable jury could infer that it was more likely than not that Plaintiff slipped on a liquid that came from the ceiling/a leaky roof, rather than from a spilled drink.  The Court so finds for several reasons, which are discussed in turn.

First, when construing the evidence in Plaintiff's favor, after Plaintiff fell, she observed the liquid on the floor to be "dirty colored, and she saw a "rusty-colored" stain on the floor in the middle of the liquid.  Eleven days after the incident Plaintiff returned to the store and she saw, in roughly the same area where she fell, a bucket collecting "dirty-colored" water leaking from a rusted ceiling pipe, and she observed a stain on the floor, which appeared similar in color to the puddle that she slipped on.  While it is true that this circumstantial evidence could support Plaintiff's theory that because the ceiling was leaking eleven days after the incident it must have been leaking on the day in question, the aforementioned evidence is not necessarily relevant or particularly probative.  Evidence is relevant if "it has a tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  By way of example, the fact

that it rained ten days after an incident and a house's roof leaked during that rainstorm, by itself, does not necessarily make it more probable that it rained ten days earlier causing the house's roof to leak at that time.  Thus, by way of example, it is only if other evidence exists that the roof leaked on the day in question is the condition of the roof afterwards relevant.  In the instant case, it is only if a liquid was coming from the ceiling in the location where Plaintiff slipped and fell on the day of the incident that such evidence of the ceiling's condition eleven days later could be deemed relevant and probative.  Here, there is no evidence in the record that it was raining on the day of the incident, and there is no evidence in the record as to whether it was raining in the area for the days following the incident.  In addition, Plaintiff testified that she cannot say that she saw any liquid leaking from the ceiling the day of the incident, and she testified that she cannot say how the liquid came to be on the floor on the day of the incident.  Mr. Leslie did not see any liquid dripping from the ceiling at the time that he arrived on the scene after Plaintiff's incident, nor were there any reports of the ceiling/roof leaking that day.  Accordingly, while it is true that the evidence from eleven days later about the ceiling's condition could support Plaintiff's theory, it is insufficient- a mere scintilla of evidence; and, there is insufficient  other evidence upon which a jury could reasonably rely to find in Plaintiff's favor.  *See Anderson, supra*, 477 U.S. at 248 ("mere existence of a scintilla of evidence in support of the [non-movant]" is insufficient to create an issue of material fact to defeat a summary judgment motion).

Another way that the evidence from eleven days later could be relevant is if there were evidence that the ceiling/roof area above where the liquid was found on the day in question had leaked previously.  Here, when construing the evidence in Plaintiff's favor, the Store's roof had several documented leaks from 2016 until the time of Plaintiff's incident; however, the record contains no evidence of a ceiling/roof leak over the area where the liquid was on the day that

Plaintiff slipped and fell.  Similarly, the record does not contain evidence of repairs to the parts of the ceiling/roof over/in the area where Plaintiff slipped and fell.  The Court finds instructive. *Zilichikhis v. Montgomery Cty.* 223 Md. App. 158 (2015).  In *Zilichikhis*, the plaintiff suffered an injury after a slip-and-fall in a parking garage.  Prior to falling, the plaintiff did not see anything on the ground, but immediately after he fell, he noticed a "wet and greasy substance" at the location where he fell.  223 Md. App. 163-64.  The next day, the plaintiff's daughter returned to the parking garage and took photos of what appeared to be oil on the garage floor in the place where he fell.  The plaintiff sued the garage on the grounds that the defendant knew about recurring spills that frequently created slippery conditions, but that defendant took no action to remedy the dangerous condition, and therefore had notice of the *generally* dangerous condition of the garage.  After defendant moved for summary judgment, the lower court granted the motion.  On appeal, the Maryland Court of Appeals affirmed summary judgment in favor of the garage, holding that the plaintiff failed to present evidence that the garage had notice of the dangerous condition of an oil or grease spill *at the same location* where plaintiff fell on the day in question.  Thus, the appellate court rejected the argument that the condition of the garage was a generally dangerous condition and held that plaintiff failed to demonstrate actual or constructive knowledge of condition.  *Id*. at 188-91.

Next, even when construing the facts in Plaintiff's favor, the Court must find that the roof assessment report, generated approximately two years prior to Plaintiff's incident, does not contain any information to support Plaintiff's argument that Defendant had actual knowledge of a leak at the location where Plaintiff fell on the day in question.  Relatedly, the roof assessment report's recommendation that the roof needed to be replaced does specify that the roof was leaking in the

area in question; thus, the report's existence does not make it more probable than the ceiling was leaking on the day of the incident. *See Doxtator v. O'Brien*, 39 F.4th 852, 860 (7th Cir. 2022).

Moreover, Plaintiff's deposition testimony about statements made by two Store employees, whose identities remain unknown, does not aid her in establishing her theory that the ceiling/roof leaked, and do not aid her in defeating summary judgment. According to Plaintiff, immediately after the incident, an unidentified person arrived carrying a mop and asked Mr. Leslie "is the ceiling leaking again." Eleven days later, when Plaintiff returned to the store, an unidentified employee stated to her: "oh a lady slipped and fell and we're having problems with the ceiling leaking." Fed. R. Evid. 801(c) defines hearsay as a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers to prove the truth of the matter asserted in the statement. Both of these statements are made by unidentified declarants and are offered for the truth of the matter. Thus, they are hearsay. Hearsay evidence is insufficient to defeat a summary judgment motion. *Hicks v. Ferreyra*, 396 F.Supp.3d 564, 579 (D. Md. 2019); *see also DeWitt v. Clean Harbors Envtl. Servs., Inc.*, Case No. RDB 16-1705, 2017 WL 3116609, at *6 (D. Md. July 21, 2017)("conclusory and hearsay evidence does not provide support sufficient to defeat a summary judgment motion").

Furthermore, even when construing the only evidence before the Court in the light most favorable to Plaintiff, a reasonable jury could infer that the liquid on the floor did not come to be there from the ceiling/roof. On the day of the incident, Plaintiff did not see the ceiling leaking, nor can she say how the liquid came to be on the floor. In addition, Mr. Leslie observed an orange liquid on the floor with a straw and a lid that looked like a McDonald's straw. In addition, Mr. Leslie did not see anything dripping from the roof or the ceiling when he arrived at the scene, nor were there any reports of ceiling leaks anywhere in the store that day, nor was he personally aware

of any leaks.[9]  Thus, even when construing all of the evidence[10] in the light most favorable to

Plaintiff, there is no genuine dispute of material fact as to whether the roof was leaking at the time

of the incident; instead, a reasonable jury could only infer that Plaintiff slipped and fell on an

orange liquid that had been in a cup with a straw.

In sum, even when construing the facts in Plaintiff's favor, insufficient evidence exists that

the roof/ceiling was leaking on the day of the incident, and that Plaintiff slipped and fell on liquid

coming from that source.  Relatedly, then, there is insufficient evidence that Defendants had actual

knowledge that the roof/ceiling was leaking on the day of the incident at the relevant location, and

there is insufficient evidence that Defendants failed to take reasonable and ordinary precautions to

prevent the leakage, Defendants created a dangerous condition. [11]

---

[9] At this procedural posture, Plaintiff's argument that Mr. Leslie was biased against her or that his testimony is incredible is irrelevant to the Court's summary judgment determination. *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007).

[10] In citing evidence in support of their summary judgment motion, Defendants also cite to the unsworn witness statement of Mr. Youngs. Mr. Youngs saw Plaintiff skid and lurch into her cart, and observed "a liquid spill and the top of a cup on the floor at her feet." (J.A. 20). The Court declines to consider this unsworn statement at the summary judgment stage. *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)("unsworn, unauthenticated documents cannot be considered on a motion for summary judgment"); *see also* Fed. R. Civ. P. 56(c)(1)(A); *see also Imbraguglio v. Great Atlantic & Pacific Tea Co., Inc.*, 358 Md. 194, 203 (2000)(unsworn witness statement is not an appropriate form of evidence to put before a court on summary judgment; an affidavit, deposition testimony or answers to interrogatories are examples of appropriate evidence).

[11] Plaintiff avers that there must have been a video from the day of Plaintiff's incident which allegedly would have captured Plaintiff's fall and the source of the liquid. It appears as though Plaintiff is arguing spoliation of evidence. (Opposition, pp. 10, 11). A movant who contends that spoliation has occurred and seeks a sanction must demonstrate that: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it. *Charter Oak Fire Ins. Co. v. Marlow Liquors, LLC*, 908 F.Supp. 2d 673, 678 (D. Md. 2012)(internal citations and quotation marks omitted); *see also QueTel Corp. v. Abbas*, 819 Fed. App'x 154, 156 (4th Cir. 2020)(citing *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013)(party may be sanctioned if duty to preserve material evidence existed, and the party willfully engaged in conduct that resulted in destruction of evidence when the party knew or should have known that the destroyed evidence was or could be relevant in litigation)). The only evidence before the Court comes from Mr. Leslie, who affirmatively stated during his deposition that he reviewed video footage after Plaintiff's fall, but the Store's video cameras did not capture the area where the incident occurred. (Manager Dep. 66:3-20, J.A. 0105). Without evidence before it that there was a video, the Court declines to speculate that one existed. Next, to the extent that Plaintiff asserts that Defendants were notified of her claim yet failed to preserve a video, Plaintiff has not put forth evidence to meet her burden under *Charter Oak*.

### 2. *Orange Drink Spilled on the Floor*

Alternatively, Plaintiff argues that if no genuine dispute of material fact exists and that the liquid came that Plaintiff slipped on came from a drink that had spilled on the floor, Defendants had actual notice of the spilled drink before the incident.

Even when construing all of the facts in Plaintiff's favor, no evidence exists from which a reasonable jury could infer that any of Defendants' employees caused the orange liquid to be on the floor.  Plaintiff cannot say how the liquid came to be on the floor, nor can she say how long it was on the floor.  In addition, Plaintiff testified at her deposition that, before she fell, she did not see any customers or any of the Store's personnel in the area where she fell.  During his deposition, Mr. Leslie testified that he did not know how long the liquid was on the floor.  The only information communicated to Mr. Leslie via walkie talkie was a "Code White" notification, i.e., he only received notice that there was a medical incident at the location where Plaintiff fell.  Accordingly, no genuine dispute of material fact exists that Defendants had actual knowledge of the spilled liquid before Plaintiff fell.

In sum, the record is devoid of evidence from which a reasonable jury could conclude that the Defendants created or had actual knowledge of the liquid on the floor at the location of Plaintiff's incident on the day she fell.  Accordingly, the Defendants are entitled to summary judgment and Motion is **GRANTED** on the issue of actual knowledge.

### C.   Constructive Knowledge & the Liquid on the Floor

As stated earlier, Plaintiff aver that the following facts establish that Defendants had constructive notice: (1) the statements made by two unidentified Store employees; (2) when Plaintiff visited the store eleven days later there was a stain on the floor similar in color to the stain on the day of the incident, and there was water leaking from a ceiling pipe.

Constructive knowledge, or constructive notice, is "notice that the law imputes based on the circumstances of the case." *Colbert, supra,* 235 Md. App. at 588 (citing *City of Annapolis v. Stallings*, 125 Md. 343 (1915)). A plaintiff may demonstrate that a proprietor had constructive knowledge by showing that the condition existed long enough that a proprietor should have discovered the condition through exercise of reasonable care. *See Deering Woods Condominium Ass'n v. Spoon*, 377 Md. 250, 264 (2003).

To demonstrate constructive knowledge, the plaintiff must put forth evidence of how long the dangerous condition existed. *Rehn*, 153 Md. App. at 593; *see also Moulden*, 239 Md. at 232. The dangerous condition must exist for a sufficient duration such that the defendant had time to inspect the premises and could have discovered the condition in the exercise of ordinary care. *Moulden,* 239 Md. at 232. Determining sufficient time for a proprietor to discover a hazard depends on the circumstances and facts surrounding the fall. *See Deering Woods*, 377 Md. at 264 (quoting *Moore v. Am. Stores Co.*, 169 Md. 541, 551 (1936)). Specifically, courts look to "time on the floor" evidence to support a claim of constructive knowledge. *Maans*, 161 Md. App. at 639-40.

The determination of what constitutes sufficient time:

> involves consideration of the nature of the danger, the number of the persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions.

*Rehn*, 153 Md. App. at 593 (citing *Deering Woods*, 377 Md. at 264)(internal quotation marks omitted).

The Court finds *Maans* to be instructive. In *Maans*, a customer slipped on liquid on the floor as she walked down a grocery store aisle. The customer in *Maans* did not see anything on

the floor prior to or after her fall.  When responding to the fall, the manager of the Store directed a person with towels in hand to "clean up all that water."  161 Md. App. at 623-24.  In *Maans*, the court held that the manager's statement to "clean up all of that water" would be sufficient for a jury to infer that the liquid on the floor was water and not soda, but this fact alone was not sufficient to overcome summary judgment.  Because the plaintiff in *Maans* offered no evidence for how long the water was on the floor prior to slip and fall incident, the court granted summary judgment in favor of the defendant store.  161 Md. App. at 640.

The facts of the instant case are analogous to *Maans*.  When construing the facts in the light most favorable to Plaintiff, Plaintiff slipped on liquid on the floor as she walked down an aisle near the grocery and freezer section of the Store.  Plaintiff did not see anything on the floor prior to her fall.  Plaintiff testified that, after falling, she saw discolored liquid and an "orangish" stain on the floor.  Mr. Leslie testified that, upon respond to the incident, he saw orange liquid and a "dirt smear" on the floor. Any statements by unidentified Store employees-- "is the ceiling leaking again" or "oh a lady slipped and fell and we're having problems with the ceiling leaking"-- constitute hearsay evidence, which is insufficient to defeat a summary judgment motion.  *Hicks*, 396 F.Supp.3d. at 579.  Moreover, the record contains no additional evidence as to the origin of the stain eleven days later.  Furthermore, regardless of the source of the liquid on the day in question, as held earlier, there is no evidence before the Court from which a reasonable jury could logically infer that  the stain Plaintiff observed eleven days later is probative of the origin of the liquid on the floor on the day of the incident.

Viewing the only evidence put before the Court and construing the facts in light most favorable to Plaintiff, there is no evidence from which a reasonable fact finder could determine how long the liquid was on the floor on the day of the incident merely from the presence of a stain

on the floor. There is no "time on floor" evidence as to the liquid from which a reasonable jury could find that the Defendant had constructive knowledge of the dangerous condition. Accordingly, Defendant is entitled to summary judgment and the Motion is **GRANTED** on the issue of constructive notice-time on the floor.

### D.  Constructive Knowledge - Duty to Inspect

Defendants argue that, even if the roof was leaking, as a proprietor, it did not have a duty to continuously inspect its premises for hazards.  Plaintiff argues that Defendants breached their duty to inspect the premises and to warn customers about its efforts to replace the roof.

As held earlier, a plaintiff may demonstrate that a proprietor had constructive knowledge by showing that the condition existed long enough that a proprietor should have discovered the condition through exercise of reasonable care.  *Deering Woods*, 377 Md. at 264.  To demonstrate constructive knowledge, the plaintiff must put forth evidence of how long the dangerous condition existed, and courts look to "time on the floor" evidence to support a claim of constructive knowledge.  *Maans*, 161 Md. App. at 639-40.

In the absence of "time on the floor" evidence, however, a court may consider whether a proprietor breached its duty to inspect its premises.  *Lexington Market Authority v. Zappala*, 233 Md. 444, 446 (1964).  "Whether a condition . . . is one which the possessor should know involves an unreasonable risk of harm to invitees is closely related to if not indistinguishable from, the extent of the possessor's duty to inspect, at least in cases in which the claimant relies on constructive notice."  *Deering Woods*, 377 Md. at 264.  However, a duty to inspect does not include a duty to continuously inspect.  *Id.*  Even when periodic inspections are necessary, courts have found it unreasonable for a proprietor to inspect and remedy a dangerous condition as soon as it occurs.  *See Honolulu, Ltd. v. Cain*, 244 Md. 590, 606 (1966).

Defendants cite to *Zappala* to support their argument that Maryland courts routinely reiterate that while proprietors have a duty to inspect premises for dangerous conditions, they do not have a duty to *continuously* inspect.  The Court finds *Zappala* and *Maans* instructive.  The plaintiff in *Zappala* slipped on oil or grease in a parking garage. She did not see any oil or grease before she slipped.  On appeal, the court held that "it may well be that a garage keeper should anticipate that oil or grease may occasionally leak from parked cars, but he is not an insurer and we think it would be unreasonable to hold that it is his duty to continuously inspect … even if we assume that periodic inspections are necessary."  233 Md. at 446.  Nearly 40 years later, the appellate court in *Maans* held that, even assuming the defendant failed to make reasonable inspections, the plaintiff failed to produce evidence that reasonable inspections would have prevented the accident.  The court also held that a store owner "has no duty to an invitee to keep records in order to lighten the invitee's burden of proving negligence."  161 Md. App. 635.

In the instant case, as held above, even when construing the fact in the light most favorable to Plaintiff, there is insufficient evidence from which a reasonable jury can infer that the ceiling/roof leaked on the day of the incident.  Next, as held above, there is no genuine dispute of material fact that Defendants had actual or constructive notice of the liquid on the floor before Plaintiff fell.  In the absence of such evidence, Plaintiff cannot establish that Defendants failed to make reasonable inspections of the Store on the day of the incident. Thus, even viewing the evidence in light most favorable to Plaintiff, the record contains no evidence from which a reasonable fact finder could determine that Defendants breached their duty to use ordinary and reasonable care to keep the premises safe, or failed to warn Plaintiff.  Therefore, no reasonable jury could find that Defendants were negligent.

Accordingly, the Defendants are entitled to summary judgment and Motion is **GRANTED** on the issue of constructive knowledge- duty to inspect or warn.

## IV.   CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment, (ECF No. 50), is **GRANTED**.  The Clerk of the Court shall enter a judgment in favor of the Defendants.  The Clerk of the Court is further directed to **CLOSE** this case.

A separate Order will follow.


Dated: September 4, 2024

_____
/s/
The Honorable Gina L. Simms
United States Magistrate Judge
